UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| BARBARA F. SANDERS, ET AL. | CIVIL ACTION NO.: 5:18-cv-0263 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| NEXION HEALTH AT MINDEN, INC. d/b/a MEADOWVIEW HEALTH & REHABILITATION CENTER, ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a motion to dismiss [Record Document 18] filed by Defendant TIG Insurance Co. ("TIG") and a related motion to strike or exclude from consideration several attachments to Plaintiffs' opposition to the motion to dismiss [Record Document 23]. Because Louisiana's Direct Action Statute establishes a right of action against a medical malpractice insurer regardless of whether the insurance contract is framed as an indemnification contract or a liability contract, the motion to dismiss [Record Document 18] is **DENIED**. The motion to strike [Record Document 23] is **GRANTED IN PART** and **DENIED IN PART**; it is **DENIED** to the extent that it seeks to strike exhibits 1, 2, 3, 4, and 6[1] to Plaintiffs' opposition, but **GRANTED** to the extent that it requests that they be excluded from consideration.[2]

I. Background

Plaintiffs allege that their sister, Margaret Ford ("Ford"), died after receiving inadequate

---

[1] Exhibit 5 to Plaintiffs' opposition is Plaintiffs' state-court petition, and Exhibit 7 is the insurance policy issued by TIG's predecessor. [Record Documents 22-5 and 22-7]. TIG's motion does not seek to strike these exhibits. [Record Document 23-1 at 1].

[2] The motion also asked the Court to strike certain exhibits to Plaintiffs' opposition to Defendant Riverstone Group, LLC's motion to dismiss. [Record Document 23]. The Court previously denied this portion of the motion as moot. [Record Document 33].

1

medical care at Meadowview Health and Rehabiliation Center, the business name of Nexion Health at Minden, Inc. ("Nexion"). [Record Document 1-2 at 5]. Plaintiffs joined two additional defendants, American Safety Insurance Company ("ASIC") and Riverstone Group, LLC ("Riverstone"). [*Id.* at 1–2]. TIG subsequently identified itself as the successor by merger to ASIC. [Record Document 1 at 1].

Following service on Riverstone, Defendants removed on the basis of diversity jurisdiction. [*Id.* at 2–3]. Although Riverstone was not diverse from all plaintiffs, Defendants argued that Riverstone had been improperly joined as it had never insured Nexion. [Record Document 13 at 7–10]. The Court invited Plaintiffs to respond with a motion to remand if they believed Riverstone was a proper defendant. [Record Document 14 at 2]. Plaintiffs then moved to remand, and Riverstone filed a motion to dismiss. [Record Documents 16 and 26]. Upon the Magistrate Judge's recommendation, the Court found that Riverstone was improperly joined, denied the motion to remand, and dismissed all claims against Riverstone without prejudice. [Record Documents 32 and 33].

In the meantime, TIG filed the instant motion to dismiss, arguing that ASIC's contract with Nexion was a reimbursement-only policy and thus did not give Plaintiffs a right of direct action. [Record Document 18]. Plaintiffs attached a variety of documents to their opposition purporting to establish that ASIC was Nexion's insurer. [Record Documents 22-1, 22-2, 22-3, 22-4, and 22-6]. TIG moved to strike these documents. [Record Document 23]. The motion to strike and the motion to dismiss are now ripe for review.

## II. Medical Malpractice Act ("MMA")

Perceiving a "crisis" of rising malpractice insurance rates, the Louisiana Legislature

2

enacted the MMA. *Hutchinson v. Patel*, 93-2156 (La. 5/23/94); 637 So. 2d 415, 419. Under the MMA, a health care provider who obtains malpractice insurance of at least $100,000 per claim and pays a surcharge becomes a qualified health care provider ("QHCP"). La. Stat. Ann. § 40:1231.2(A), (E) (2016). A QHCP enjoys two advantages—a cap on its liability and a requirement that all claims be reviewed by a medical review panel ("MRP") before suit may be brought. *Dupuy v. NMC Operating Co.*, 2015-1754, p. 4 (La. 3/15/16); 187 So. 3d 436, 439 (citing *Williamson v. Hosp. Serv. Dist. No. 1 of Jefferson*, 2004-0451, p. 4 (La. 12/1/04); 888 So. 2d 782, 785). Any damage awards above the $100,000 cap are paid by the Patient's Compensation Fund ("PCF") up to a maximum of $500,000 exclusive of future medical expenses. La. Stat. Ann. § 40:1231.2(B)(3). Through this structure, the legislature intended to reduce malpractice insurance rates and ensure compensation for injured patients. *See Perritt v. Dona*, 2002-2601, p. 8 (La. 7/2/03); 849 So. 2d 56, 61 (citing *Hutchinson*, 93-2156; 637 So. 2d 415; *A. Copeland Enters., Inc. v. Slidell Mem'l Hosp.*, 94-2011 (La. 6/30/95); 657 So. 2d 1292; *Tucker v. Lain*, 1998-2273 (La. App. 4 Cir. 9/5/01); 798 So. 2d 1041).

### III. <u>Motion to Strike or Exclude from Consideration</u>

Plaintiffs attached the following exhibits to their opposition to TIG's motion to dismiss: their request to convene an MRP and the MRP's opinion, [Record Documents 22-1 and 22-4], three documents related to the PCF's verification that Nexion was a QHCP insured by ASIC, [Record Documents 22-2, 22-3, and 22-6], the state-court petition, [Record Document 22-5], and the ASIC policy, [Record Document 22-7]. TIG moved to strike or exclude from consideration all but the state-court petition and the insurance contract. [Record Document 23 at 1]. Plaintiffs insist that the documents are properly before the Court because they illuminate

3

the MMA's application to this case. [Record Document 31 at 4].

### A. <u>Motion to Strike</u>

A court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed R. Civ. P. 12(f). Because motions to strike are often a "dilatory or harrassing [sic] tactic" 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1380 (3d ed.), they are disfavored, *Augustus v. Bd. of Pub. Instruction*, 306 F.2d 862, 868 (5th Cir. 1962) (citing *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953)). A motion to strike is appropriate only if a part of a pleading "has no possible relation to the controversy." *Id.* (quoting *Brown & Williamson*, 201 F.2d at 822). Because the rule's text reaches only "pleadings," it is an improper vehicle through which to ask this Court to strike attachments to an opposition to a motion to dismiss. *See Groden v. Allen*, No. CIV.A. 3:03-CV-1685D, 2009 WL 1437834, at *3 (N.D. Tex. May 22, 2009) (citing *Shah v. Chertoff*, No. CIVA305-CV-1608-BHK, 2007 WL 2948362, at *5 (N.D. Tex. Oct. 10, 2007)) ("[Rule 12(f)] does not permit the Court to strike motions or matters within them because the rule applies only to pleadings."). Therefore, to the extent that it is a motion to strike under Rule 12(f), TIG's motion is denied.

### B. <u>Motion to Exclude from Consideration</u>

In the alternative to striking Plaintiffs' attachments, TIG requests that this Court exclude them from consideration. [Record Document 23 at 1]. Although Plaintiffs note that courts have declined to strike exhibits to oppositions to motions to dismiss, [Record Document 31 at 3], Plaintiffs do not effectively grapple with the underlying issue: whether, in this case, the Court may properly consider material outside the pleadings.

4

As a general rule, a motion to dismiss under Rule 12(b) is evaluated solely on the pleadings. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)). However, the Fifth Circuit has recognized a limited exception such that a court may consider documents attached to a motion to dismiss when those documents are "referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (citing *Collins*, 224 F.3d at 498–99). Plaintiffs' MRP request and the panel's opinion are referred to in Plaintiffs' state-court petition, but are not central to it. [Record Documents 1-2 at 7, 22-1, and 22-4]. The notice that the PCF was verifying Nexion's QHCP status, the verification itself, and a PCF credential naming ASIC as Nexion's insurer are not referenced in Plaintiffs' state-court petition. [Record Documents 1-2, 22-2, 22-3, and 22-6]. Therefore, TIG's motion is granted to the extent that it seeks to exclude from consideration exhibits 1, 2, 3, 4, and 6 to Plaintiffs' opposition to the motion to dismiss.

## IV. <u>Motion to Dismiss</u>

### A. <u>Legal Standard</u>

In order to survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). In determining whether the plaintiff has stated a plausible claim, the court must construe the complaint in the light most favorable to her, *see In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th

Cir. 2010), and accept as true all well-pleaded factual allegations, *see Twombly*, 550 U.S. at 555. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Thus, the Court does not have to accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005) (citing *Southland Sec. Corp. v. INSpire Ins. Sols, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).

B. <u>ASIC's Insurance Contract with Nexion</u>

On a 12(b)(6) motion, a court may consider materials outside of the pleadings only when a plaintiff refers to them in the complaint and the materials are central to her claim. *Scanlan*, 343 F.3d at 536. The existence and nature of the contract of insurance between a tortfeasor insured and an insurer are central to the claims of direct-action plaintiffs, such as Ford's siblings. Plaintiffs' petition alleges that Nexion was insured by ASIC, thus referencing by implication the policy attached to TIG's motion to dismiss. [Record Document 1-2 at 6]. Moreover, Plaintiffs quote a specific policy provision in their opposition and attach the policy as an exhibit. [Record Documents 22 at 4 and 22-7]. On the basis of these facts, the Court concludes that it may consider the ASIC policy.

The ASIC policy provides that ASIC "will reimburse the Named Insured for those Damages the Named Insured Paid as a result of any Bodily Injury or Property Damage." [Record Document 18-2 at 6]. Similarly, ASIC obligates itself to "reimburse the Named Insured for those Damages the Named Insured Paid as a result of any Medical Incident." [*Id.* at 17]. The contract also provides that "[n]o person or organization has a right under this policy . . . to join [ASIC] as a party or otherwise bring [ASIC] into a claim against the Named Insured seeking

Damages." [*Id.* at 11].

An insurance policy may be either a liability policy or an indemnification policy. *See First Nat'l Bank of Louisville v. Lustig*, 975 F.2d 1165, 1166 (5th Cir. 1992) (citing *Quinlan v. Liberty Bank & Tr. Co.*, 575 So. 2d 336, 353 (La. 1990), *on reh'g* (March 11, 1991) (plurality opinion)). "[U]nder a liability policy a cause of action accrues when liability attaches, whereas under an indemnification policy there is no cause of action until the liability has been discharged, as by payment of the judgment by the insured." *Id.* at 1167 (quoting *Quinlan*, 575 So. 2d at 353). Here, the ASIC policy, by repeatedly referencing reimbursement, contemplates that ASIC's obligation to Nexion will come into existence only after Nexion pays a malpractice victim. Thus, as framed by the parties to it, the ASIC policy is an indemnification policy.

### C. Direct Action Statute

Plaintiffs assert their right to sue TIG under Louisiana's Direct Action Statute, which provides in pertinent part:

> B. (1) The injured person or his survivors or heirs . . . shall have a right of direct action against the insurer within the terms and limits of the policy . . . .
> (2) This right of direct action shall exist whether or not the policy of insurance sued upon was written or delivered in the state of Louisiana and whether or not such policy contains a provision forbidding such direct action, provided the accident or injury occurred within the state of Louisiana. Nothing contained in this Section shall be construed to affect the provisions of the policy or contract if such provisions are not in violation of the laws of this state.
> C. It is the intent of this Section that any action brought under the provisions of this Section shall be subject to all of the lawful conditions of the policy or contract and the defenses which could be urged by the insurer to a direct action brought by the insured, provided the terms and conditions of such policy or contract are not in violation of the laws of this state.
> D. It is also the intent of this Section that all liability policies within their terms and limits are executed for the benefit of all injured persons and their survivors or heirs to whom the insured is liable; and, that it is the purpose of all liability policies to give protection and coverage to all insureds, whether they are named

insured or additional insureds under the omnibus clause, for any legal liability the
insured may have as or for a tortfeasor within the terms and limits of the policy.

La. Stat. Ann. § 22:1269 (Supp. 2018).

The effect of this statute is to "grant[] a procedural right of action against an insurer where the plaintiff has a substantive cause of action against the insured." *Gorman v. City of Opelousas*, 2013-1734, p. 11 (La. 7/1/14); 148 So. 3d 888, 896 (quoting *Hood v. Cotter*, 2008-0215, pp. 17–18 (La. 12/2/08); 5 So. 3d 819, 829). Thus, the reach of the Direct Action Statute depends upon the distinction between a right of action and a cause of action. A person has a right of action when she "belongs to the particular class in whose exclusive favor the law extends the remedy" or "has the right to invoke a remedy which the law extends only conditionally." *Babineaux v. Pernie-Bailey Drilling Co.*, 262 So. 2d 328, 333 (La. 1972) (quoting Henry George McMahon, *The Exception of No Cause of Action in Louisiana*, 9 Tul. L. Rev. 17, 29–30 (1934)). Conversely, a cause of action exists if the "law affords a remedy to <u>anyone</u> for the particular grievance alleged by plaintiff." *Id.* (emphasis added) (quoting McMahon, *supra*, at 29–30).

Recognizing this distinction, the Louisiana Supreme Court has held that a direct action does not exist where the law or contractual provisions defeat any possible substantive cause of action against an insurer. For instance, the right of direct action against does not allow a medical malpractice victim to obtain from an insurer damages in excess of the statutory cap. *Descant v. Adm'rs. of the Tulane Educ. Fund*, 93-3098, p. 4 (La. 7/5/94); 639 So. 2d 246, 249. Similarly, because a cause of action exists to enforce a claims-made policy only when the claim is made and reported during the applicable policy period, the Direct Action Statute may not be used to impose liability on an insurer for a claim that was not timely presented. *Hood*, 2008-0215, pp.

17–18; 5 So. 3d at 829.

Under an indemnification policy, the insured's cause of action against the insurer does not arise until the insured has discharged its liability. *Lustig*, 975 F.2d at 1167 (quoting *Quinlan*, 575 So. 2d at 353). Nevertheless, if a policy provides "insurance against the liability of the insured for the personal injury or . . . property damage to a tort victim," the victim has a right of direct action against the insurer "regardless of whether the policy is framed in liability or indemnity terms." *Quinlan*, 575 So. 2d at 347 (plurality opinion).[3] Thus, under *Quinlan*, if a policy protects a tortfeasor insured from loss caused by a victim's bodily injury, the victim's right of action still exists even if the insured's cause of action against the insurer has yet to accrue.[4]

### D. Application

The ASIC policy contains a no-action clause ostensibly depriving tort victims of a right of action against ASIC. [Record Document 18-2 at 11]. Nevertheless, "[d]irect action statutes are remedial legislation which void no action clauses . . . ." *Black v. First City Bank*, 94-0423, p. 3 (La. 9/6/94); 642 So. 2d 151, 153 (citing *Morewitz v. W. of Eng. Ship Owners Mut.*, 896 F.2d 495 (11th Cir. 1990)). Hence, the Direct Action Statute nullifies the no-action provision of the ASIC policy and prevents TIG from relying upon that provision to avoid joinder to Plaintiffs' action

---

[3] The Louisiana Supreme Court initially held that direct action was available regardless of the policy's language when the insurance was directed against liability for personal injury or corporeal property damage. *Quinlan*, 575 So. 2d at 347 (plurality opinion). The court later rejected the distinction between corporeal and incorporeal property damage and held that direct action is available to a victim who suffers damage to either type of property even if the contract is framed as an indemnity contract." *Black v. First City Bank*, 94-0423, p. 5 (La. 9/6/94); 642 So. 2d 151, 154.

[4] Although *Quinlan* is a plurality opinion, five of the seven justices agreed with the plurality's interpretation of the Direct Action Statute. *See* 575 So. 2d at 355 (plurality opinion); *id.* (Hall, J., concurring separately); *id.* at 356 (Marcus, J., dissenting).

against Nexion.

The Louisiana Supreme Court has repeatedly emphasized that the Direct Action Statute is to be "liberally construed" so as to protect tort victims. *See, e.g., Grubbs v. Gulf Int'l Marine, Inc.*, 625 So. 2d 495, 498 (La. 1993) (quoting *Quinlan*, 575 So. 2d at 353 (plurality opinion)). The ASIC policy insures Nexion's liability for losses occasioned by "bodily injury or property damage" and by negligently performed professional medical services. [Record Document 18-2 at 6, 17]. Because the Direct Action Statute applies to all policies that insure against personal injury or property damage, *Black*, 94-0423, p. 5; 642 So. 2d at 154; *Quinlan*, 575 So. 2d at 347 (plurality opinion), the Court finds that Plaintiffs have a right of action against TIG as ASIC's successor.

TIG makes two arguments that this Court must address. Because the ASIC policy is an indemnification policy rather than a liability policy, TIG argues that it is liable only if Nexion pays Plaintiffs and then only to Nexion. [Record Document 18-1 at 13–14]. The Louisiana Supreme Court has foreclosed this line of argument:

> In our opinion the Direct Action Statute is a mandate for a tort victim to bring a direct suit to recover damages for personal injury or . . . property damage from the tortfeasor's insurer, <u>regardless of whether the insurer has framed the policy as a liability or an indemnity contract</u>. It would lead to absurd consequences to interpret the statute as permitting an insurer to insulate itself from such an action by framing its policy as an indemnity contract or by inserting a "no action" clause in its policy. At the time of Louisiana's first enactment of a direct action statute in 1918, many of the policies issued were indemnity policies requiring that loss actually be sustained, i.e., through the payment of a judgment by the insured. The legislative history is clear that the principal object of the statute was to overcome strategems [sic] of that kind by insurers to bar tort victims' direct suits to recover for personal injuries and . . . property damage resulting from automobile collisions and other kinds of harmful impacts.

*Quinlan*, 575 So. 2d at 352 (plurality opinion) (internal citations omitted) (emphasis added). As discussed above, the ASIC policy is framed as an indemnification policy. Nevertheless, under

10

*Quinlan*, the indemnity language is simply irrelevant because the policy insures against Nexion's liability for personal injury to its patients.

TIG also points to the fact a direct action may only be "maintained within the terms and limits of the policy" and "shall be subject to all of the lawful conditions of the policy or contract and the defenses which could be urged by the insurer to a direct action brought by the insured." La. Stat. Ann. § 22:1269(A), (C). In effect, TIG asserts that the ASIC policy's reimbursement language acts to defeat any action until Nexion discharges any liability it may have to Plaintiffs. [Record Document 18-1 at 14–17]. This argument fails for three reasons. First, the version of the Direct Action Statute in effect at the time of *Quinlan* contained the language on which TIG relies. *See Quinlan*, 575 So. 2d at 348 (plurality opinion) (quoting La. Stat. Ann. § 22:655, *recodified as amended at* La. Stat. Ann. § 22:1269). Thus, the Louisiana Supreme Court's interpretation of the statute necessarily considered the effect of this language and determined that it did not alter the availability of direct action in personal injury cases. *See id.* at 347.

Second, "in the absence of legislative amendment of a statute during a long period, a reasonable construction of that statute 'may reasonably be presumed to be in accord with the legislative intent.'" *Grubbs*, 625 So. 2d at 502 (quoting *Traigle v. PPG Indus.*, 332 So. 2d 777, 782 (La. 1976)). Despite having amended the Direct Action Statute twice in the twenty-eight years since *Quinlan* was decided, the Louisiana Legislature has not altered the language to which TIG points. This fact supports a view that the *Quinlan* court's construction of the statute to allow direct action in personal injury cases accords with legislative intent.

Finally, TIG's argument misses the distinction between a cause of action and a right of action. There is no dispute that Plaintiffs have a cause of action against Nexion. By the operation

11

of the Direct Action Statute, Plaintiffs' substantive cause of action against Nexion gives rise to a procedural right of action against Nexion's insurer. *See Gorman*, 2013-1734, p. 11; 148 So. 3d at 896 (quoting *Hood*, 2008-0215, pp. 17–18; 5 So. 3d at 829).

TIG has not denied the potential existence of Nexion's cause of action under the ASIC contract. Instead, TIG argues that Plaintiffs are improper parties. [Record Document 18-1 at 16–17]. Under Louisiana law, contractual terms that absolutely preclude coverage for a certain claim prevent direct action plaintiffs from maintaining an action against the insurer on the basis of that claim. *See, e.g., Gorman*, 2013-1734, pp. 14–15; 148 So. 3d at 897–98; *Hood*, 2008-0215, pp. 18–19; 5 So. 3d at 830 (direct action unavailable under claims-made-and-reported medical malpractice policy if the claim is not timely made and reported); *Anderson v. Ichinose*, 98-2157 (La. 9/8/99); 760 So. 2d 302, 307 (same). Such contractual provisions prevent a third-party claimant's direct action not because the claimant lacks a right of action, but because the provisions prevent a substantive cause of action against the insurer from ever arising. *See Gorman*, 2013-1734, at p. 11–12; 148 So. 3d at 896 (citing *Hood*, 2008-0215, p. 18; 5 So. 3d at 829–30). Here, although Nexion's cause of action against ASIC has not yet accrued (because Nexion has yet to discharge any liability to Plaintiffs), Nexion's potential cause of action has not been extinguished or otherwise defeated. Thus, Plaintiffs have a right of action until such time as no cause of action against TIG can ever exist under the ASIC contract.

"[T]he Direct Action Statute is a mandate for a tort victim to bring a direct suit to recover damages for personal injury . . . from the tortfeasor's insurer, regardless of whether the insurer has framed the policy as a liability or an indemnity contract." *Quinlan*, 575 So. 2d at 352 (plurality opinion). As a result, the Court concludes that the indemnity language in the ASIC policy does

not deprive Plaintiffs of a right of action against TIG as ASIC's successor. The Court makes no findings regarding whether any other provisions of the contract may alter the availability of a direct action, whether Nexion is a QHCP, or TIG's obligations under the ASIC policy.

## IV. Conclusion

For the reasons given, TIG's motion to dismiss [Record Document 18] is **DENIED**. TIG's motion to strike or exclude from consideration exhibits 1, 2, 3, 4, and 6 to Plaintiffs' opposition to the motion to dismiss [Record Document 23] is **GRANTED IN PART** and **DENIED IN PART**. The motion is **DENIED** to the extent that it seeks to strike the listed exhibits, but **GRANTED** to the extent that it seeks to exclude them from consideration.

The parties are **REFERRED** to the Magistrate Judge for entry of a scheduling order.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 6th day of Sept, 2018.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE